# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Case No. 2:17mj548

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

located in the _Southern_ District of _Ohio_, there is now concealed *(identify the person or describe the property to be seized)*:

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, U.S Code Sections 841(a)(1) | Possession with the intent to distribute more than 500 grams of cocaine. |

The application is based on these facts:

☐ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_A. T. Kelly_
Applicant's signature

Antonio Kelly / Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: 9/25/17

City and state: Columbus, Ohio

_Judge's signature_

Kimberly A Jolson, US Magistrate Judge
Printed name and title

# AFFIDAVIT

I, Antonio T. Kelly, (hereafter referred to as affiant) being duly sworn deposes and state:

## INTRODUCTION

I am a Special Agent of the Drug Enforcement Administration (DEA) assigned to the Detroit Field Division, Columbus District Office. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18 U.S.C.§ 2510(7), that is, an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in Title 18 U.S.C.§ 2516. Your affiant has been employed by the DEA since August 21, 2017. Your affiant is empowered to investigate, to make arrests with or without warrants and to execute search warrants under the authority of Title 21 U.S.C. § 878.

Prior to being employed by the DEA your affiant was employed by the Bureau of Prisons located in Williamsburg, South Carolina, from March 2008 to August 2016. Also, your affiant held various law enforcement positions from 2005 to present including the Charleston County Sheriff's Office in Charleston South Carolina. During this time, your affiant has accumulated the following training and experience:

(a) I graduated from the DEA Academy on February 03, 2017 in Quantico Virginia. I received approximately 20 weeks of training including controlled substances identification, interview and interrogation training, preparation of search warrants, tactical application of narcotics enforcements, tactical undercover training, surveillance and electronic monitoring techniques, money laundering investigations and various forensics subjects including latent finger print collections and analysis.

(b) During my law enforcement career your Affiant has participated in and conducted numerous investigations of violations of various State and Federal criminal laws, including the unlawful possession with intent to distribute controlled substances, the distribution of controlled substances and conspiracy to possess with the intent to distribute and distribute controlled substances, in violation of Title 21, United States Code. These investigations have resulted in arrests of individuals who have possessed with the intent to distribute and distributed marijuana, cocaine, cocaine base, heroin, and MDMA as well as other controlled substances. These various investigations have also resulted in seizures of illegal drugs and proceeds from the distribution of those illegal drugs.

(c) The information set forth comes from information provided to me by other law enforcement officers involved in the investigation.

1. Because this affidavit is being submitted for the limited purpose of seeking authorization for the execution of a search warrant, your affiant has not set forth each and every fact learned during the course of the investigation. Your affiant has set forth only those facts that your affiant believes are necessary to establish the foundation for an order authorizing the requested search warrants.

## BACKGROUND OF INVESTIGATION

2. On September 21, 2017 at approximately 1:29 p.m., Ohio State Highway Patrol (OSP) Trooper Mike Wilson was observing traffic traveling east on Interstate 70 in Franklin County, Ohio ( Southern District of Ohio). In substance, Trooper Wilson observed a white Volvo XC90 Jeep displaying an Arizona license plate CBS9751 speeding in a construction zone.

3. Trooper Wilson identified the driver as **ARAUJO** and identified the front seat passenger as Diana Laura Lizarraga **COSIO**. **ARAUJO** produced a new Arizona driver's license and COSIO produced and USA B1/B2 VISA/BBC. **ARAUJO** was the registered owner of the vehicle.

4. **ARAUJO** stated he was traveling from Arizona to the state of New York to see the Statue of Liberty. Trooper Wilson then smelled a strange aroma coming from the vehicle. Through Trooper Wilson's prior Law Enforcement experience he also identified that a Volvo XC90 Jeep is known to have trap compartments hidden inside and drug traffickers commonly attempt to conceal the originating smell of narcotics by masking the smell with another strong aroma. Trooper Wilson utilized his police canine to conduct a free air sniff of their vehicle. The canine provided a positive trained indication to the presence odor of narcotics near the driver side rear door.

5. A probable cause search was then conducted of the vehicle. Trooper Wilson went to the front seat of the vehicle and observed tooling marks on the front bolts and identified spray foam underneath the carpet in an area where it should not be for the make of the vehicle. Trooper Wilson pushed a hole through the foam and was able to access a hidden compartment (trap) underneath the back driver and passenger seats. Trooper Wilson then could see a brick substance wrapped in black tape under the driver side back seat. Due to the bolting and hidden compartment, Trooper Wilson did not have the tools to fully access the trap and **ARAUJO** and **COSIO** along with their vehicle were escorted to the Ohio State Highway Patrol post.

6. Once the driver side rear seat was able to be removed, the hidden compartment was clearly identified and a trap was inside. Inside the trap was 5 brick shape objects wrapped in black tape. Troopers conducted a field test and received a positive response for the presence of cocaine.

7. Trooper Wilson advised both occupants of their Miranda Warnings both verbally and in writing. **ARAUJO** exercised his right to remain silent. A search of **ARAUJO** found that he had a hidden cellular phone on his person which he had not disclosed to investigators and investigators further discovered that **ARAUJO** had removed the cellular phone's SIM chip, which was found in a separate location in his wallet, and that the SIM card had been broken.

8. DEA TFO's Annie Durbin and Raul Melo along with OSP Sergeant Stephanie Hanner interviewed CASIO and she stated she had no knowledge of the hidden compartment or the cocaine.

9. Based on my training and experience and the training and experience of other law enforcement officers involved in this investigation, Your Affiant knows that drug traffickers commonly use multiple cellular telephones and other mobile digital devices to communicate with other drug traffickers, customers, and financiers. Also, drug traffickers commonly maintain names, telephone numbers, addresses, audio, text messages and photographs sent between themselves and drug traffickers which they support and supply in those telephones and digital storage devices and attempt to dispose of any of the above information to conceal the identity of such. Agents believe that information contained in the above listed cell phone to be searched could possibly assist agents in learning, among other things, the identity and/or location of other yet unidentified drug traffickers, customers, and financiers, as well as unidentified sources of supply and routes of delivery, pickup and distribution of drugs. Also your affiant recognizes that Interstate 70 is a commonly known route for trafficking narcotics by drug traffickers traveling to and from the state of New York.

10. Based on the foregoing, it is Your Affiant's contention that there is probable cause to believe the Device contains fruits or other evidence of possession with intent to distribute cocaine in violation of Title 21, United States Code Sections 841(a)1) and (b)(1)(B) involving ARAJUO Joosael and potentially others.

## TECHNICAL TERMS

11. Based on my training and experience, I use the following technical terms to convey the following meanings:

(a)  Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

(b)  Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.

Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

(c) Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

(d) GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

(e) PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

(f) Based on my training, experience, and research, I know that the Devices have capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

1. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:
   (a) Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   (b) Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   (c) A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

      (d) The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

      (e) Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

   2. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

3. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## ATTACHMENT A

The property to be searched is a) LG Cricket FCC: ZNFB460; IME 014109-00781966-0; suspected to belong to ARAUJO. The phone has been maintained in DEA custody since the traffic stop.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the Devices described in Attachment A that relate to violations of 21 U.S.C. 841 and involve Josael Iribe ARAUJO and others since the beginning of this investigation including:

   a. lists of customers and related identifying information;

   b. types, amounts, and prices of drugs possessed, distributed and trafficked as well as dates, places, and amounts of specific transactions;

   c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   d. any information regarding ARAUJO's schedule or travel.

   e. any information relating to participants and coconspirators of the crime.

   f. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

## CONCLUSION

3. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

Antonio Kelly
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me
This _25th_ day of September, 2017

The Honorable Kimberly A. Jolson
United States Magistrate Judge
**Southern** District of Ohio